## ST. LAWRENCE COUNTY OYER AND TERMINER.

### August, 1848.

#### Edmonds, Justice, presiding.

### The People v. James Gallagher.

The prisoner was convicted of manslaughter in the second degree, for having caused the death of his mother, in a cruel and unusual manner, by kicking her, and wounding her womb, when she was afflicted with *prolapsus uteri*.

The prisoner was an Irishman, and he, his wife, and his mother, were all in the habit of getting drunk. One day when his mother was at his house, helping him move, and they had all of them drank very freely, the wife and mother got into a quarrel, in the course of which the prisoner took offense at something the mother said, when he thrust her rudely out of doors, threw her upon the ground, and repeatedly kicked her. A little girl of about eleven years old tried to stop him, when he turned violently upon her. She fled, and he pursued her till she hid herself in a swamp, when he returned to his mother, who was lying prostrate on the ground, and resumed his kicking her, until his brother-in-law interfered and took the deceased into his house. She died the second day afterward.

The attending physician found, on examining her, that her womb protruded from the vagina as large as his two fists, and there were two cuts in it, and it was tumified. She complained, also, of being hurt in the side. To him and to others she uniformly said that she had received the hurts by falling down cellar.

The day before she died, and when it was known that she could not recover, the prisoner left home. Two days afterward he appeared before a magistrate in a distant town, who testified: —

"He came into my office in the morning and asked me if I was a magistrate; I said I was; he said he came in to

deliver himself up to the authorities for an awful crime. I asked what crime; he said he had killed his mother; I asked when, and where, and how it happened; he said that on Saturday previous his mother was at his house to assist him in moving, and in the course of it his wife and mother fell out, and his mother cast up to his wife something she ought not to, and he flew at her violently, seized her, and kicked her out of doors on to a stump, and she was dead; I asked if she died before he left; he said no, she was dying when he left; that she had forgiven him, and when he had got her forgiveness he left the house and went into the woods without any particular purpose; the first place he found himself was Brasher's Falls; from there he went to Norfolk, and from there to one Leonard's, where he stayed all night.

" I issued a warrant, and put him in charge of a constable.

"I asked him if he was sane? He said he was, except the horrors of conscience for the awful crime he had committed. I then asked him if he had been drinking. He said he had not drank for some time previous to that day, but that day he had got some liquor and drank, and we forced the old lady to take some. He said they drank only three or four times. He seemed very much affected — said it was fate and he was ready to suffer for the deed he had done."

*The Judge* charged the jury that the prisoner was on trial for murder, but might be convicted of manslaughter. There being no doubt that he had perpetrated the homicide, the only question was as to the nature of the offense. If they could find that he had intended to kill, then it was murder, but if they could not find such an intention then the homicide was manslaughter, and being perpetrated in a cruel and unusual manner, it was the second degree of that crime.

The jury found him guilty of manslaughter in the second degree.